**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

SCOTT ANDOCHICK, M.D.,                )
                                       )
        Plaintiff/Counter Defendant,   )
                                       )
v.                                     )        Civil Action No.: 1:11-cv-739
                                       )
RONALD AND JUNE BYRD,                  )
                                       )
        Defendants/Counter Claimants.  )

### MEMORANDUM OPINION

Before the Court are Defendants' Motion to Dismiss (Dkt. No. 39) and Plaintiff's Motion

for Partial Summary Judgment (Dkt. No. 45). For the reasons stated in open Court, as well as the

reasons provided herein, the Motion to Dismiss is GRANTED in part, and the Motion for

Summary Judgment is DENIED as moot.

**I.      Background**

At issue in this cause of action are the rights to various property interests initially

belonging to the now deceased Erika Byrd ("Erika"). The facts are simple and not disputed. At

the time of her death, Erika was an attorney at Venable ("Venable"). She participated in the

Venable Retirement Plan ("401(k)") and obtained insurance  through the Venable Life Insurance

Plan ("Life Insurance"). Plaintiff, Scott Andochick, the deceased's ex-husband, brings suit

against Erika's parents, Ronald and June Byrd (the "Byrds"), as individuals, and in their capacity

as co-administrators of Erika's estate. Specifically at issue are the rights to Erika's 401(k) and

Life Insurance proceeds ("the benefits") and the right to a 2005 BMW 645i.[1]

---

[1] Andochick filed a three-count amended complaint. Count I seeks declaratory judgment that the Byrds lack
standing; Count II seeks  declaratory judgment that ERISA preempts the Byrds' claims to the plan benefits; and
Count III is a claim for conversion of the BMW 645i.

Dr. Andochick and Erika married on February 25, 2005. A little over a year later, the couple separated on July 7, 2006, and entered into a Marital Settlement Agreement on August 20, 2007 ("MSA"). The MSA is comprehensive and "binding upon the respective heirs . . . of the parties." MSA at 6.2. It includes:

- Andochick's waiver of any interest or survivorship rights in Ms. Byrd's 401(k), MSA ¶ 2.9(d);

- A release of present and future rights "as a beneficiary under any life insurance policy . . . or any other beneficiary designation," including an agreement to execute and deliver releases upon the request of the other,  MSA ¶ 6.4(c);

- Andochick's agreement to make lease payments on a 2005 BMW used exclusively by Erika, MSA ¶ 2.11(b); and

- An agreement to execute documents "required to carry out provisions of this Agreement." MSA at 6.8.

On December 31, 2008, the couple divorced pursuant to a Judgment of Absolute Divorce in Montgomery County, Maryland.  The judgment incorporated the MSA. Approximately two-and-a-half years later, Erika passed away on April 10, 2011. The decedent's parents, the Byrds, qualified as co-administrators of her estate shortly thereafter.  In spite of the MSA, in June 2011, the plan administrator of Erika's 401(k) and Life Insurance policies determined that the policies would be paid to Dr. Andochick, because he remained the named beneficiary on the plan documents at the time of Erika's death. *See* Policies, ECF No. 38-1. The Byrds appealed the plan administrator's decision on August 3, 2011.

Andochick filed suit in this Court on July 13, 2011, arguing that ERISA preempts the waiver provisions in the MSA. The Byrds take the position that the MSA requires Andochick to

relinquish his rights to the ERISA benefits. On July 15, 2011, the Byrds filed suit against Andochick in Montgomery County Circuit Court (the "Circuit Court"). The Byrds asked the Circuit Court to find Andochick in contempt of the MSA and the Judgment of Absolute Divorce and to order him to waive his interest in Erika's 401(k) and Life Insurance proceeds. The Byrds also filed a motion for a temporary restraining order and a preliminary injunction. The Circuit Court granted the temporary restraining order, and the parties later agreed to the entry of a preliminary injunction. The agreed to preliminary injunction enjoined the parties from accepting any portion of the 401(k) or Life Insurance proceeds pending a final determination on the merits as to the proper beneficiary.

On September 22, 2011, the Byrds filed a Motion to Stay the proceedings in this Court pending the outcome of the action they filed against Andochick in the Circuit Court. This Court granted Plaintiff's Motion, finding that the Circuit Court had a strong interest in adjudicating matters related to its prior Judgment of Absolute Divorce and the incorporated MSA. In addition, because federal courts do not have exclusive jurisdiction over the ERISA issues presented here, the Court found that the Circuit Court's ruling might interfere with an order from this Court. These fears proved unwarranted as the Circuit Court avoided the ERISA issue. *See* Trial Tr. 23:9-17, Dec. 21, 2011, ECF No. 38-6 (finding that the ERISA issue was not before the Circuit Court judge). Ultimately, the Circuit Court found Andochick to be in contempt of the its Judgment of Absolute Divorce and ordered Andochick to "execute any documents and take all actions necessary and required . . . to waive and renounce any interest he has in the . . . 401(k) Plan and [L]ife [I]nsurance benefits . . . ." Order, Dec. 28, 2011, ECF No. 38-5. The Circuit Court did not address the effect ERISA statutes may or may not have on the ultimate disposition of the benefits.

On February 17, 2012, the Byrds filed the present Motion to Dismiss the Amended Complaint (Dkt. No. 39) on the basis of res judicata and Federal Rules of Civil Procedure 12(b)(1) and (6). Andochick filed a Motion for Partial Summary Judgment on March 2, 2012, arguing that the Byrds lack standing to pursue claims against Andochick for the ERISA governed benefits, and that even if the Byrds had standing, ERISA preempts any claim they might have to the benefit proceeds.

The Court heard oral argument on this matter on March 23, 2012. At that time, the Court expressed concern with issuing an order before the Byrds exhausted their administrative remedies in pursuit of the 401(k) and Life Insurance benefits. On March 30, 2012, the Byrds filed a Status Report with the Court as to the position of both their 401(k) plan and Life Insurance plan appeals. *See* ECF No. 56. As to the 401(k) plan appeal, the Venable Employee Benefits Committee affirmed their Initial Determination and issued a final and binding determination in favor of Andochick. *See* ECF No. 56-1. This ends the administrative process with respect to the 401(k) plan.

The Venable Life Insurance Plan issued a letter indicating they were unable to make a determination as to the proper payee. *See* ECF No. 56-3. The letter indicates that the Plan intended to file an interpleader action by October 16, 2011, but to date, the Court has not been made aware of any such action. *Id.* In effect, the Byrds have exhausted their administrative remedies both in relation to the 401(k) and Life Insurance plans, and to the extent the Court's concern with exhaustion was warranted, it has been satisfied.[2] This matter is ripe for disposition.

---

[2] Andochick responded to the Byrds' Status Report and did not contest the authenticity of these documents.

## II.     Legal Standard

The portion of the Byrds motion filed pursuant to Federal Rule of Civil Procedure

12(b)(6) challenges the legal sufficiency of the Complaint, with all facts alleged considered as

true for purposes of the motion.  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

A plaintiff may proceed into the litigation process only when his or her complaint is justified by

both law and fact.  *Id.*  In that respect, to survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Although the general rule is that a court may not consider documents outside the

complaint in deciding a motion to dismiss, "a court may consider . . . documents central to a

plaintiff's claim, and documents sufficiently referred to in the Complaint . . . without converting

the motion to dismiss into one for summary judgment, so long as the authenticity of such

documents is not disputed." *Am. Intern. Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc.*,

628 F. Supp. 2d 674, 678-79 (E.D. Va. 2009) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x

395, 396-97 (4th Cir. 2006)); *Gasner v. Cnty. of Dinwiddle*, 162 F.R.D. 280, 281 (E.D. Va. 1995)

("[T]he Court may consider documents not attached to, but referenced in the plaintiffs' Amended

Complaint, when testing the legal sufficiency of that pleading. . . . without converting the motion

into one for summary judgment.") (citations omitted).  In the Amended Complaint, Andochick

alleges that

> 28. On June 8, 2011, the Plan Administrator for Venable LLP reached its decision
> and advised the Co-Administrators, the Byrds and Dr. Andochick that the
> 401(k) Proceeds and Life Insurance Proceeds would be payable to Dr.
> Andochick as required by ERISA and the ERISA-governed plan documents.
> A copy of that decision is attached hereto as Exhibit 3.

29. The Co-Administrators and/or the Byrds were given sixty (60) days to administratively appeal that decision.   It is not clear whether the Co-Administrators and/or the Byrds have done so or intend to do so.

Am. Compl. ¶¶ 28-29, ECF No. 38. The Status Report that the Byrds filed, at the Court's request, following the hearing on this motion is "central to the Plaintiff's claim," and is, at least implicitly, "referred to in the Complaint." Andochick's entitlement to the benefits as the named beneficiary is dependent on the ultimate disposition of the plan administrator—the subject matter of the Status Report. In addition, Andochick filed a reply to the Status Report and the attached exhibits, and he did not dispute their authenticity or the relevant portion of their contents. *See* ECF No. 57. Thus, the Court finds it appropriate to consult the Status Report, and the documents attached thereto, at the motion to dismiss stage.

In any event, even without consulting the Status Report the Court would presume that Andochick is the named beneficiary according to the plan documents. This is because the Court is to "presume that all factual allegations in a plaintiff's complaint are true" at the motion to dismiss stage. *Gasner*, 162 F.R.D. at 281 (citing *Puerto Rico ex. Rel. Quiros v. Alfred L. Snapp & Sons*, 632 F.2d 365 (4th Cir. 1980), *aff'd*, 458 U.S. 592 (1982)). Because Andochick's pleadings allege he is the named beneficiary, the Court is required to accept his allegations as true at this stage. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 n.7 (4th Cir. 1988) ("[E]ven though the district court cited to exhibits submitted [with the motion to dismiss], the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto. Harrison has therefore in no way been prejudiced because the district court referred to alternative sources for the allegations."). At its core, this Court's Opinion is based on the presumption that Andochick is the ERISA plan designated beneficiary, not on the factual accuracy of the presumption.

Finally, even if the Court found it necessary to convert this matter to a Motion for Summary Judgment,[3] *see* Fed. R. Civ. P. 12(d) (requiring a court to convert a 12(b)(6) motion to one for summary judgment if matters outside the pleadings are considered), the Court is only required to afford the parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(d); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).[4] The only additional information the court finds "pertinent," which was not in the Amended Complaint or attached documents, is the information within the Status Report and the attached exhibits. These documents provide support for Andochicks position that he is entitled to the benefits as the individual named on the plan documents. Importantly, the Plaintiff was given an opportunity to respond to this material and did not object to the substance of the Report. So, even if the Court had converted this action under Fed. R. Civ. P. 12(d), the Court would grant summary judgment in the Defendants favor, albeit on different procedural grounds, based on the same substantive grounds as that identified within the body of this Opinion.

Andochick also filed a motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

---

[3] To be clear, the Court does not find this to be the case.

[4] The Fourth Circuit has also commented that "a motion to dismiss should not be converted into one for summary judgment without notice to the parties and without affording to the party against whom summary judgment is sought time for appropriate discovery." *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988). If the Court were actually converting this Motion to one for summary judgment, the Court should comply with these procedural requirements. Here, the Court is not converting this motion to one for summary judgment. This portion of the Opinion is only intended to articulate that had such a conversion been necessary, the outcome of the Opinion would have remained the same.

7

reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party. . . ." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson*, 477 U.S. at 255).

Because the Court is convinced that Andochick has not, and cannot, state a legal basis for relief as to Counts I and II, the Court GRANTS Defendants Motion to Dismiss with prejudice as to those Counts. The Court dismisses Count III without prejudice pursuant to its discretionary powers in 28 U.S.C. § 1367(c)(3). Plaintiff's Motion for Summary Judgment is DENIED as moot. Although there is no genuine dispute of fact, summary judgment is inappropriate here because, as a matter of law, Plaintiff cannot prevail.

## III.   Analysis

### a.   Count 1: The Byrds have Standing to pursue their claim.

The first count in the Amended Complaint asks the Court to declare that the Byrds lack standing to pursue their claims against Dr. Andochick for the ERISA-governed proceeds. The argument was made before the Circuit Court, and the doctrine of collateral estoppel precludes this Court from deciding the issue for a second time.

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Because the Circuit Court judgment originates from Maryland, this Court must consider Maryland's preclusion doctrine. Maryland courts have settled on the following four-pronged test to determine the applicability of collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?

8

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Wash. Suburban Sanitary Comm'n v. TKU Assocs.*, 376 A.2d 505, 514 (Md. 1977).

As to the first prong, Andochick argued before the Circuit Court that the Byrds' lacked

standing to pursue a right to the ERISA benefits. This is the identical issue he presents to this

Court now. As to the second prong, the Circuit Court issued a final judgment on the merits

regarding the Byrds' standing.

> MR. BOUQUET: So, the Court is taking a position that the Byrds have standing
> as third-party beneficiaries and that the estate has standing . . .
> THE COURT: Yes.

Trial Tr. 52:5-10, Dec. 21, 2011, ECF No. 38-6. The Circuit Court then issued an Order, *see*

Order, Dec. 28, 2011, ECF No. 38-5, and declared that the ruling was final. *See* Trial Tr. 62:16-

63:6, Dec. 21, 2011, ECF No. 38-6. Third, the collateral estoppel doctrine is being asserted

against Dr. Andochick, and Dr. Andochick was a party in the former adjudication. Finally, Dr.

Andochick was given a fair opportunity to be heard on this matter at the hearing before the

Circuit Court. In short, Count I of the Amended Complaint is barred under the doctrine of

collateral estoppel, and the Byrds have standing to pursue a claim against Andochick for the

ERISA proceeds. *See also Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 134 (3d Cir.

2012) (finding that the named beneficiary on the ERISA plan documents had a "presently

enforceable right to the plan proceeds, and the Estate ha[d] standing to challenge that right by

seeking to enforce [the] waiver" in the property settlement agreement). For these reasons, Count

I is DISMISSED.

### b.  Count II: Declaratory Judgment as to ERISA Preemption

The second count of the Amended Complaint asks the Court to declare that ERISA

preempts the MSA and any claim the Byrds might have to the ERISA plan benefits.

### i.  Count II is not precluded by the Circuit Court decision.

The Byrds argue that this issue, like the standing issue, is precluded by the Circuit Court

decision. This Court finds otherwise. The Circuit Court made clear its understanding that it was

only considering whether Andochick was required to sign a waiver based upon the language

within the MSA. The court did not consider the possible effect ERISA might have on the signed

waiver. *See* Trial Tr. 23:9-14, Dec. 21, 2011, ECF No. 38-6 ("There may be some reason why

under ERISA the administrator doesn't have to honor that waiver . . . , but that's not before me . .

. . What's before me is can I make him sign the paper, not whether the paper does anybody any

good once it is signed, in my view, at least at this point."). The question before this Court is

precisely the issue that the Circuit Court avoided; to be exact, this Court must determine whether

ERISA supersedes the MSA and entitles Andochick to retain the benefits in dispute.

### ii.  Count II is properly pled as a Declaratory Judgment action.

The Byrds argue that Andochick is an improper claimant under ERISA or that his claim

is not a proper issue for declaratory relief.[5] Again, the Court disagrees. Declaratory judgment is a

proper form of relief in this instance. The Fourth Circuit has been clear.

> [A] federal court may properly exercise jurisdiction in a declaratory judgment
> proceeding when three essentials are met: (1) the complaint alleges an "actual
> controversy" between the parties "of sufficient immediacy and reality to warrant
> issuance of a declaratory judgment;" (2) the court possesses an independent basis
> for jurisdiction over the parties (e.g., federal question or diversity jurisdiction);
> and (3) the court does not abuse its discretion in its exercise of jurisdiction.

---

[5] The Court considered these issues once before. *See* Dkt. No. 12 (Order denying the Byrds' Motions to Dismiss
without prejudice). The Court finds that these bases for the Byrds' Motion are unavailing, and the Court will dismiss
Count II on other legal grounds.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201).

It is hardly in dispute that the present cause of action satisfies these elements. The ongoing disagreement as to who should ultimately exercise control over the benefits at issue is sufficient to establish the actual controversy requirement. Andochick takes the position that the MSA does not require him to relinquish the ERISA benefits to the Byrds. The Byrds take the opposite position. This is controversy. Additionally, the fact that at least one of the plan administrators has refused to disburse the benefits indicates that there is an issue of sufficient immediacy to warrant a declaration from this Court as to the proper payee. Finally, the Byrds heartily dispute the plan administrator's decision that Andochick is the proper payee of the 401(k) benefits. If the Court has not been presented with an actual controversy, it is difficult to imagine any situation where this prong could be satisfied.

As to the second prong, this Court possesses an independent basis for jurisdiction under 29 U.S.C. § 1132(a)(1)(B), which provides that a civil action may be brought by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Andochick is a beneficiary clarifying his rights to future benefits under the terms of the plan. He falls squarely within the statute. *See Boggs v. Boggs*, 82 F.3d 90, 94 (5th Cir. 1996).

Andochick also satisfies the final prong because the Court finds that declaratory judgment will serve a useful purpose. The Fourth Circuit has clarified that a district court does not abuse its discretion in exercising declaratory judgment when it "'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Const. Equip.*

*N. Am., Inc.*, 386 F.3d at 394 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th

Cir.1937)). Given the national discordance within the circuits as to the very issue before the

Court, in addition to the fact that the Fourth Circuit has not yet considered the present issue, the

Court finds that declaratory judgment is this instance will serve a particularly useful purpose and

will provide future guidance to plan administrators. In addition, the ultimate disposition of the

ERISA funds at issue will be directly impacted by this Court's ruling. In short, this is precisely

the cause of action where declaratory judgment is warranted.

### c. ERISA does not preempt contractual claims to plan benefits subsequent to the plan administrator's disbursement of the proceeds.

To be sure, the critical issue before the Court is whether ERISA preempts the Byrds'

enforcement of the waiver provision within the MSA once the benefits are distributed, or in the

alternative, if ERISA does not affect post-disbursement funds. As indicated in the Supreme

Court's *Kennedy* decision, this remains an open question. *See Kennedy v. Plan Administrator for*

*DuPont Savings and Investment Plan*, 555 U.S. 285, 299 n.10 (2009) ("Nor do we express any

view as to whether the Estate could have brought an action in state or federal court against [the

beneficiary] to obtain the benefits after they were distributed.").[6] In *Kennedy*, the Supreme

Court's ruling only went so far as to hold that the initial ERISA plan *administrator's*

*disbursement decision* could not be altered because of waiver language within a divorce decree.

*Id.*at 299. Instead, the Supreme Court found that the plan administrator has a statutory duty to

---

[6] Among other reasons, the fact that the *Kennedy* decision post-dates the Supreme Court's *Boggs v. Boggs* decision indicates that the Supreme Court also did not answer this question in *Boggs*. 520 U.S. 833 (1997). Indeed, in *Boggs* the majority concludes its decision by noting, "[i]t does not matter that respondents have sought to enforce their purported rights only after [the ERISA plan designee's] benefits were distributed, since those rights are based on the flawed theory that they had an interest in the undistributed benefits." *Boggs v. Boggs*, 520 U.S. 833, 834-35 (1997). Stated another way, even though the procedural setting in *Boggs* was post-disbursement, the legal argument presented was that the party asserting the waiver provisions had a pre-disbursement right to the funds. These are not the facts here, and to the extent that the Byrds also claim they are entitled to the ERISA funds before the funds are distributed by the ERISA plan administrator, both *Boggs* and *Kennedy* foreclose that possibility.

pay the benefits in strict conformity with the plan documents. *Id.* at 300. This rule establishes a straightforward and easily administrable scheme with standard procedures. *Id.* at 300-301.

Again, this action begins where the *Kennedy* decision ended. Here, the question is whether the Byrds' right to enforce the waiver provision in the MSA authorizes them to divest disbursed ERISA benefits from Andochick, the plan documents' designated beneficiary. This Court is not the first to take up this issue. *Compare Sweebe v. Sweebe*, 712 N.W.2d 708, 710 (Mich. 2006) ("While a plan administrator is required by ERISA to distribute plan proceeds to the named beneficiary, the named beneficiary can then be found to have waived the right to retain those proceeds."), *Pardee v. Personal Representative for Estate of Pardee*, 112 P.3d 308, 316 (Okla. Civ. App. Div. 2 2004) ("[T]he pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed," and the divorce decree could control the allocation of ERISA funds after disbursement.), *and Alcorn v. Appleton*, 708 S.E.2d 390, 392 (Ga. App. 2011) ("ERISA does not preempt claims against funds already distributed from an ERISA plan.), *with Staelens v. Staelens*, 677 F. Supp. 2d 499 (D. Mass. 2010) (noting that post-ERISA disposition lawsuits to enforce waiver provisions "would appear to go against the various interests which the Supreme Court deemed served by a uniform administrative scheme"),[7] *and In re Estate of Kensinger*, No. 09-6510, 2010 WL 4445752, at *7 (D.N.J. Nov. 1, 2010) (finding that permitting an estate to "assert a claim directly against [the beneficiary] to enforce the putative waiver in the Property Settlement Agreement . . . would directly undermine ERSIA's [sic] stated objectives and run contrary to the Supreme Court's precedent interpreting ERISA"), *overruled by Estate of Kensinger*, 674 F.3d 131.

---

[7] Although the holding in *Stalens* was ultimately based on a different issue than discussed here, the court there at least indicated that permitting a contractual waiver to reach disbursed ERISA benefits would be contrary to the objectives of ERISA. *But see Estate of Kensinger*, 674 F.3d at 138-39 (distinguishing the outcome in *Stalens* from the facts currently before the Court).

Most recently, addressing facts virtually identical to those presented here, the Third Circuit reversed the district court's decision in *Estate of Kensigner*. The Third Circuit considered whether ERISA preempted a waiver provision in a property settlement agreement, *after* the plan proceeds had been distributed by the administrator. *Estate of Kensinger*, 674 F.3d at 134. Answering this question in the negative, the court explained that "permitting suits against beneficiaries *after* benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA." *Id.* at 137 (emphasis in original).

With this backdrop in mind, the Court first looks to the language in the ERISA statutes for guidance. The relevant provision requires a plan administrator to discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . . ." 29 U.S.C. § 1104. Although this language emphasizes the significance of the plan documents, it does not speak to what happens after the administrator makes the initial disbursement according to those plan documents. For this reason, it is appropriate to consider federal common law in answering this question. *See Estate of Kensinger*, 674 F.3d at 135.

The Supreme Court has identified three points of emphasis in applying the ERISA statutes. This "uncomplicated rule" focuses on "'[1] simple administration, [2] avoid[ing] double liability, and [3] ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'" *See Kennedy*, 555 U.S. 285, 301 (2009) (quoting *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)); *see also Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001) ("One of the principal goals of ERISA is to . . . 'establish a uniform administrative

scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'") (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

This Court finds persuasive and adopts the Third Circuit's reasoning, concluding that the ultimate disposition of the present ERISA benefits is subject to a two-part analysis. First, 29 U.S.C. § 1104 dictates that the benefits must be paid to Andochick in accordance with the plan documents rule. *See Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138 (4th Cir. 2011) ("[T]he Supreme Court construed 29 U.S.C. § 1104(a)(1)(D) as a broad endorsement of the 'plan documents rule.'" (quoting *Kennedy*, 555 U.S. at 303)) . This rule ensures that each of the three goals enumerated in *Kennedy* is satisfied: (1) the rule is simple, the benefits go to the person listed on the plan documents; (2) the rule prevents double liability, only the person listed on the plan documents is entitled to the benefits; and, (3) the rule ensures that beneficiaries get what's coming quickly. Here, for example, Andochick should quickly receive the benefits as the named beneficiary.

None of these considerations are diminished by permitting an action against Andochick as a matter of contract law after the initial distribution—the second step in the analysis. Andochick argues that such a conclusion disregards the third core objective of the ERISA statutory scheme, namely, the significance placed on providing certainty to beneficiaries regarding the final distribution of ERISA benefits. But this Court agrees with the Third Circuit's analysis. An "assumption about ERISA's continuing solicitude for beneficiaries after the distribution of benefits [i]s based on an overreading of *Kennedy*." *Estate of Kensinger*, 674 F.3d at 136 (emphasis in original). Instead, the third objective is intended to ensure "the expeditious distribution of funds *from plan administrators*, not to some sort of rule providing continued

15

shelter from contractual liability to the beneficiaries who have *already received* plan proceeds."
*Id.* (emphasis in original).

The concern with providing certainty to beneficiaries goes no further than ensuring that
the person named on the plan documents can be certain that he is unquestionably entitled to the
initial payout from the plan administrator. If that beneficiary signed a separate agreement,
altering his right to retain the benefits, the federal law will not go so far as to shield that person
from his obligations, based on rights that he freely contracted away. The bottom line is that
ERISA does not alter common law waivers or impede challenges against beneficiaries after they
have received the initial payment as a beneficiary under the ERISA plan.

Andochick's argument is nonsensical that he is being deprived of what he assumed was
his. Andochick must have contemplated that he was forgoing any claim to the benefits when he
signed the MSA. If this was not his intent, then the parties should have worded the language
within the MSA differently. The fact that he must now comply with his contractual arrangement
can hardly be said to catch him off-guard or cause uncertainty in relation to his expectations
regarding the benefits. Nor can it be said to interfere the ERISA's concern that the beneficiary
named on the plan documents get what's coming quickly. Enforcing the MSA does not preclude
Andochick from *getting* what's coming quickly; rather, the MSA precludes Andochick from
*keeping* what's coming quickly.

The Court also finds support for its conclusion from the Fourth Circuit's comments in
*Boyd v. Metropolitian Life Ins. Co.* 636 F.3d 138 (4th Cir. 2011). In *Boyd*, the Fourth Circuit
applied the plan documents rule from *Kennedy* and found that the plan administrator must pay
the beneficiary named on the ERISA plan documents in spite of a waiver provision within a
separation agreement. Similar to the present facts, the deceased and the named beneficiary

separated and signed an agreement waiving rights as beneficiaries under any life insurance policy. The deceased spouse failed to change the designation on the plan documents, and the ex-spouse remained the named beneficiary at the time of death. The deceased's estate filed an action seeking to enforce the waiver provision, but the court upheld the plan administrator's determination that the ex-spouse was entitled to the benefits as the named beneficiary. The Fourth Circuit was not presented with the question of whether the estate had any recourse after the plan administrator's disbursement, but in dicta, the court noted, "[n]one of this means that the separation agreement is irrelevant. Its interpretation and enforcement, however, are not matters for the plan administrator, but are between [the plan beneficiary] and the [estate]." *Id.* at 145. This language persuades the Court that the Fourth Circuit would agree with the Court's determination *sub justice*, that ERISA does not foreclose the permissibility of a separate action between the Byrds and Andochick, nor does ERISA preempt the waiver provision in the MSA in all circumstances.

Accordingly, the Court is unable to grant Plaintiff the declaratory relief he seeks because it is confronted with legal authority dictating a different result. Contrary to Plaintiff's request, ERISA does not preempt all rights the Byrds have under the MSA.[8] Instead, ERISA only controls the disbursement of the benefit proceeds at the plan administrator level. Once the proceeds are within Andochick's control, he is obligated to fulfill his responsibilities under the MSA, as ordered by the Circuit Court.

---

[8] In their briefing, the Byrds take the position that some of the money would go to Ms. Byrd individually as a second named beneficiary under the ERISA plan designation form. This is incorrect. The Court has not altered the determination that the proper payee under the ERISA plan documents is as Andochick indicated on the plan documents. Instead, the Court's decision today applies only after Dr. Andochick receives the benefits. Only then does the MSA require that he relinquish his rights. Thus, the final disposition of the benefits would be to Erika's estate. Ms. Byrd's authority over the funds is only because of her position as an administrator of Erika's estate, not as a second named beneficiary on the ERISA documents.

### d. The beneficiary designation does not supersede the MSA's waiver provision as a final bequest.

Andochick argues that, even assuming the Court's above findings are accurate, by leaving Andochick's name on the plan documents as the designated beneficiary, Erika expressed her ultimate intent to leave her benefits to Andochick. Explained differently, Andochick's argument is that the MSA gave Erika the right to dispose of the benefits how she saw fit. In the MSA, Andochick waived his claim to the benefits to Erika, and the fact that she kept Andochick's name as the designated beneficiary indicates that she chose to leave the ERISA benefits to Andochick. Thus, Andochick claims he is not required to waive a right to her bequest, though had Erika named someone else as the beneficiary, he waived any right to use his role as her former husband to assert a superior claim against her chosen designee. Contrary to Andochick's arguments, this determination is not a factual question as to Erika's subjective intent;[9] rather, the question is a legal one, and is based on the clear and objective language within the MSA.

Andochick cites to other courts that have considered similar, but factually distinct, arguments. In some instances, courts have found that the language in the agreement clearly requires the ex-spouse to waive all rights, even if the spouse remains the ERISA designee at the time of death. In other instances, courts have found that a waiver provision will not strip the ex-spouse of his rights as a named beneficiary. These courts have found instead, that the waiver only precludes the ex-spouse from claiming entitlement to the benefits even when not named as

---

[9] Andochick argues that the designation of Dr. Andochick as the ERISA-governed beneficiary on the ERISA documents provides the only source for determining Erika's intent. To the contrary, the language of the MSA is the source for determining the parties' intent, and the Circuit Court found that the language in the MSA clearly requires Andochick to waive his claims to the plan benefits.

the ERISA designee.[10] *See Stalens*, 677 F. Supp. at 509 (providing a general overview of the courts' varying conclusions). The differing outcomes appear to be based on the precise wording of the waiver provisions.

In *Stalens*, the separation agreement indicated that each party would "retain" his or her separate pension agreements and plans and renounce any interest in the plans of the other. 677 F. Supp. 2d at 510. The deceased spouse did not remove the ex-spouse as the designee on the ERISA benefits plan documents. The court found that the ex-spouse did not have to relinquish the benefits because the language in the separation agreement "lack[ed] the specificity which caused other courts to uphold a waiver." *Id.* (quoting *Stiles v. Stiles*, 487 N.E.2d 874, 875 n.3 (Mass. App. Ct. 1986) ("Divorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides.")). Thus, the ex-spouse did not have to waive a right to the ERISA benefits.

In *Langevin v. McMorrow*, the relevant language in the marital divorce agreement provided that the parties

> "waive[d] any right at law or in equity to elect to take under a Last Will made by the other," and "waive[d] . . . all and every interest . . . which either may now have or may hereafter acquire in or to any real or personal property of the other." Each retained "the right to dispose of his or her property by Will, or otherwise, in such manner as each may in his or her uncontrolled discretion deem proper." Maria also "waive[d] her right to any of [John]'s pension plan." The agreement further provided that each party would "execute . . . all . . . instruments that may be necessary ... to carry out the provisions" of the agreement.

No. 10-P-1591, 2011 WL 2436748, at *1 (Mass. App. Ct. June 20, 2011). The court found that the agreement permitted the deceased to freely dispose of his property as he saw fit, and nothing in the agreement barred him from "changing (or not changing) his designated beneficiary of the plan, and [the named beneficiary/ex-spouse] was entitled to retain those benefits." *Id.* at *2. The

---

[10] This is the argument that Andochick makes here.

court noted that the language in the agreement stating that "no party 'will claim any interest in the estate of the other,' . . . [wa]s not implicated . . . , as [the beneficiary] ha[d] not brought a claim against [the deceased's] estate." *Id.*

The language of the waiver provision in the present MSA is easily distinguishable from the language analyzed in either *Staelens* or *Langevin*, and as the *Staelens* court identified, "each [of these] decisions turns on the particular language in either the plan documents or the divorce decree or both." *Staelens*, 677 F. Supp. 2d at 508. The MSA's relevant language is as follows:

> Except for the rights provided in this Agreement, *each party hereby relinquishes and releases unto the other* all statutory, contractual, equitable and common law *rights that each may have or in the future may acquire to any property*, real or personal, which the other now owns or may hereafter acquire, *including* but not limited to any future expectancies and *any right*, claim or interest *as a beneficiary* under any life insurance policy, IRA account, *or any other beneficiary designation made prior to execution of this Agreement*, and each agrees that he or she will, upon request of the other, execute and deliver such releases or assurances as may be desired by the other to indicate, demonstrate or to carry out the release and relinquishment of such interests.

MSA, 6.4(c), ECF. No. 38-2 (emphasis added). The Court finds that this language clearly expresses that Andochick is not entitled to retain the ERISA benefits, in spite of the fact that he remained the named beneficiary at the time of Erika's death.[11] The MSA requires Andochick to waive his right to the ERISA benefits and to relinquish his rights to "the other," or Erika.[12]

The MSA states, in clear terms, that Andochick waives any rights resulting from a "beneficiary designation made prior to execution of this Agreement." The relevant beneficiary designations were made on March 6 and March 16, 2006. *See* Policies, ECF No. 38-1. The MSA was notarized on August 20, 2007, and incorporated into the December 31, 2008 Judgment of

---

[11] Andochick argues that if Erika had not wanted him to keep the ERISA proceeds, she should have modified the plan documents. But the opposite could equally be true. That is, if Erika had wanted to express her intent to benefit Andochick with the benefits, she and Andochick could have modified the MSA. As it stands, the language in the agreement is clear. Andochick waived his rights to the ERISA proceeds.

[12] *See supra* note 3 (the rights are released to Erika's estate, not to Ms. Byrd individually).

Absolute Divorce. The beneficiary designations in question were plainly "made prior to the execution of [the MSA]," and the MSA unquestionably requires Andochick to waive his rights to those benefits.

> Significantly, this issue was already decided by the Circuit Court.
>
> THE COURT: Well, she's waiving her right to be a beneficiary under the life insurance policy on his life and he's waiving his right to be one –
> MR. BOUQUET: I don't believe that's what it says, Your Honor.
> THE COURT: I think it does.

Trial Tr. 44:2-7, Dec. 21, 2011, ECF No. 38-6. The Circuit Court rejected, at least implicitly, the argument Andochick makes here, and this Court agrees. Even if such an implicit determination was not made by the Circuit Court, this Court finds that the language in the MSA requires Andochick to waive his right to the ERISA benefits.

Plaintiff's request for relief under Count II of the Amended Complaint is DENIED, and Count II is DISMISSED with prejudice as it fails to state a legal basis for relief upon which relief can be granted.

### e. Count III: Conversion

The last Count in Andochick's amended complaint alleges that the Byrds converted and wrongfully retain possession of a BMW belonging to Andochick. Andochick asks the Court to order return of the BMW 645i or award him the fair market value of the automobile in an amount not less than $25,000.00.

The Court finds that this count is properly pled and is not precluded because of the Circuit Court decision. Nor does this count involve the Court in probate administration. Andochick is not claiming that the estate owes him a debt; rather, he alleges that the BMW does not belong to the estate in the first instance.

Nonetheless, when a Court's basis for hearing a claim is established by supplemental jurisdiction, a federal court has discretion to dismiss the supplemental claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *See Shanaghan v. Cahill*, 58 F.3d 106, 109 -110 (4th Cir. 1995) (citing *Noble v. White*, 996 F.2d 797, 799 (5th Cir.1993)). Factors to consider include "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-727 (1966); *see also Carnegie-Mellon Univ.*, 484 U.S. at 350. Considering the Court's findings as to Counts I and II above, only the conversion count remains. Each of the federal claims over which this Court had original jurisdiction[13] has been dismissed far in advance of trial; thus, the Court finds it appropriate to dismiss the remaining state court count without prejudice.

## IV.   Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  Plaintiff's Motion for Summary Judgment is DENIED as moot.

---

[13] Based on the pleadings, the Court presumes the conversion claim is valued at $25,000. Because this amount falls short of the amount in controversy requirement necessary to the exercise federal diversity jurisdiction, the Court finds there are no independent grounds for federal jurisdiction over the conversion claim. *See* 28 U.S.C. § 1332.

Counts I and II of the Amended Complaint are DISMISSED with prejudice.

Count III is DISMISSED without prejudice.

It is the Court's belief that the administrative actions are complete, and Andochick has been determined to be the proper beneficiary as designated by the plan documents. The plan administrators are directed to pay the ERISA funds to Andochick. In accordance with the Circuit Court's order, Andochick must then waive his right to these funds, distributing them instead to Erika's estate.

An appropriate Order shall issue.

May 9, 2012
Alexandria, Virginia

_____
/s/
Liam O'Grady
United States District Judge

23